1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 ## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| VICTOR I. MURDOCK, | 1:09-cv-1806 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

18

19 ## **BACKGROUND**

20      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21 "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB")

22 pursuant to Title II of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before

23 the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24 Sheila K. Oberto, United States Magistrate Judge.[1]

25

26

27      [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 8, 9.)  On April 7,
2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ.
28 P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1945, has an associate's degree in accounting, and previously worked as a bookkeeper and tax clerk. (Administrative Record ("AR") 29-30, 46, 125.) On September 6, 2006, Plaintiff filed an application for DIB, alleging disability beginning on August 30, 2004, due to memory loss and problems with concentration from a stroke. (AR 15, 58.)

**A.    Medical Evidence**

**1.    Dr. Reddy**

On September 18, 2006, Plaintiff reported to Jaipal Reddy, M.D., that he felt tired and weak and unable to stand for more than three to four hours, sit for more than six hours, and walk for more than three hours in a day. (AR 167-68.) Plaintiff had decreased mental alertness, "difficulty thinking as well as formulating thoughts," and difficulty with concentration. (AR 167.) Plaintiff had difficulty with both short-term and long-term memory and reportedly was confused at times. (AR 167-68.)

Plaintiff further complained of moderate to severe knee pain, occasional, shooting leg pain, and severe fatigue. (AR 168.) Plaintiff could not walk more than a block or carry more than 50 pounds. Plaintiff could, however, carry up to 20 pounds occasionally. (AR 168.) According to Dr. Reddy, Plaintiff "cannot do any full time or even a part time job even whether it is a desk job or even answering the phones as he has difficulty with thought process formulation and significant limitations with the cognitive skills." (AR 168.)

**2.    Dr. Hirokawa**

On December 21, 2006, Greg Hirokawa, Ph.D., completed a consultative psychological evaluation. (AR 169-74.) Plaintiff reported to Dr. Hirokawa that he cooked, vacuumed, washed laundry, and performed yard work. (AR 172.) Plaintiff's typical day involved waking up at 8 o'clock in the morning, showering, dressing, and performing yard work once a week; his concentration varied from day to day. (AR 172.) Plaintiff enjoyed working on his computer and "reported having a few friends and described their relationship as good." (AR 172.)

2

Dr. Hirokawa diagnosed Plaintiff with adjustment disorder with depressed mood, for which Plaintiff was not receiving treatment. (AR 172, 173.) Dr. Hirokawa noted that Plaintiff's "symptoms of depression appeared to be within the mild range, and primarily due to his physical problems and the associated limitations. His communication skills were good." (AR 173.)

Dr. Hirokawa's functional assessment of Plaintiff was as follows:

[Plaintiff] is capable of managing his funds.

[Plaintiff's] ability to remember location and work-like procedures is good.

[Plaintiff's] ability to understand and remember very short and simple instructions is good.

[Plaintiff's] ability to understand and remember detailed instructions is good.

[Plaintiff's] ability to carry out very short and simple instructions is unlimited.

[Plaintiff's] ability to maintain attention and concentration for extended periods is good.

[Plaintiff's] ability to accept instructions from a supervisor and respond appropriately to criticism is good.

[Plaintiff's] social judgment and awareness of socially appropriate behavior is good.

[Plaintiff's] ability to perform activities within a schedule, maintain regular attendance, and be punctual is good.

[Plaintiff's] ability to function independently and sustain an ordinary routine without special supervision is good.

[Plaintiff's] ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform on a consistent basis is good.

[Plaintiff's] ability to interact with coworkers is good.

The likelihood of [Plaintiff] emotionally deteriorating in a work environment is minimal.

(AR 173-74.)

### 3.    Dr. Tran

On December 30, 2006, Juliane Tran, M.D., completed a consultative neurologic examination of Plaintiff. (AR 175-78.) Plaintiff reported to Dr. Tran that he "tends to be quite

forgetful and frequently forgets to do some tasks that were assigned to him.  Eventually, his work hours were decreased to part-time and then further reduced because his boss noticed he has episodes of 'staring in space' and decreased concentration.  He then stopped working." (AR 175.)  Dr. Tran noted that Plaintiff's reported activities of daily living included cooking, gardening, mopping, and washing dishes.  (AR 176.)  Dr. Tran's functional assessment of Plaintiff was as follows:

> [Plaintiff] should be able to handle his own funds.  He should be restricted with activities involving frequent multitask [sic] sequencing, but not occasional. . . . He can drive if he passes a driving test.  He probably should be restricted with frequent climbing, balancing, and working with heights but not occasional.  There are no restrictions with steps or stairs or uneven terrain.  There are no fingering or grasping restrictions.  No specific lifting restrictions.  No sitting, standing, visual, or environmental restrictions.

(AR 178.)

### 4.    Dr. Bugg

On January 9, 2007, G. W. Bugg, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC").  (AR 179-85.)  Dr. Bugg opined that Plaintiff could (1) occasionally lift and/or carry 50 pounds and frequently 25 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 180.)  Plaintiff could occasionally climb and balance and frequently stoop, kneel, crouch, and crawl.  (AR 181.)  Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid concentrated exposure to hazards.  (AR 181-82.)

### 5.    Dr. Unger

On February 12, 2007, H.T. Unger, M.D., a state agency psychiatrist, completed a psychiatric review technique form on which Dr. Unger found that Plaintiff's adjustment disorder with depressed mood caused Plaintiff mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  (AR 189, 196.)  Dr. Unger found insufficient evidence of episodes of decompensation of extended duration. (AR 196.)

Dr. Unger noted that Plaintiff drove himself to his consultative examination on December 21, 2006, where he complained of feeling depressed, having poor concentration and short-term memory problems, although Plaintiff had no history of psychiatric issues, treatment, or medications. (AR 198.) Dr. Unger further noted that Plaintiff occasionally prepared income tax returns on a part-time basis and engaged in a range of activities, including performing household chores, cooking, yard work, and working on a computer. Plaintiff also had good relationships with a few friends. (AR 198.) Dr. Unger, therefore, found that Plaintiff's adjustment disorder with depressed mood was not a severe impairment. (AR 186, 189, 198.)

**B.    Lay Witness Testimony**

**1.    Tom Stefanopoulos, Stamoules Produce Company**

In a letter dated July 3, 2007, Tom Stefanopoulos, the Vice President of Stamoules Produce Company, wrote that Plaintiff worked for the company from July 1993 to June 2004 as a full-time bookkeeper in charge of the accounts payable department. (AR 145.) "In January 2003 [Plaintiff] suffered a debilitating stroke which affected his ability to perform his assigned responsibilities. His accuracy and speed were slowed and he would have lapses of memory and concentration. There would be occasions when he would slip into a trance during a normal conversation." (AR 145.) "[Plaintiff's] workload was shortened and others were assigned to help him keep up with his duties but eventually we could no longer find work that he could easily perform." (AR 145.) "We would have continued his employment up until his age of eligibility for benefits had it not been for his disability." (AR 145.)

**2.    Rev. Jerry Gollihar, Alamo Assembly of God Church**

In a letter dated July 6, 2007, Rev. Jerry Gollihar, pastor of the Alamo Assembly of God Church, wrote than he had known Plaintiff for over 20 years and that Plaintiff had a stroke in January 2003 "and has not been the same." (AR 147.) Rev. Gollihar noted that Plaintiff attended his church and that "often during church [Plaintiff] will doze off." (AR 147.) "It is not because I bore him

because he will do it when we have a special guest.  I do not feel he can hold a job because he can't

concentrate at [sic] long periods of time."  (AR 147.)

### 3.   Teresa Blanco, Valley Ventures, Inc.

In a letter dated July 13, 2007, Teresa Blanco, the office manager of Valley Ventures, Inc.,

wrote that Plaintiff had worked for Valley Ventures from April 4, 2005, to June 29, 2005, as an

assistant bookkeeper. (AR 146.) Plaintiff's "job ended due to health problems which prevented him

from concentrating and his memory failed to retain critical information from one day to the next.

[Plaintiff] explained to me that his medical condition also caused him to be half asleep during

working hours." (AR 146.) According to Ms. Blanco, Plaintiff ultimately quit working for Valley

Ventures, after "taking into consideration [Plaintiff's] personal safety." (AR 146.)

## C.   Administrative Hearing

The Commissioner denied Plaintiff's application initially and again on reconsideration;

consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 52-

77.) On September 3, 2008, ALJ James P. Berry held a hearing where Plaintiff and a vocational

expert testified. (AR 25-51.)

### 1.   Plaintiff's Testimony

Plaintiff had worked for 40 years as a bookkeeper and had suffered a stroke in January 2003.

(AR 33.) According to Plaintiff, his stroke caused him to "zone out" for 10 to 15 minutes at a time.

(AR 36-37.) Plaintiff had worked for 11 years at Stamoules Produce Company before he was let go

in June 2004. (AR 32-33.) Plaintiff did part-time work as a tax preparer during tax season; he last

worked on June 29, 2005, as a bookkeeper for Valley Ventures for two months. (AR 30-32.)

### 2.   Vocational Expert Testimony

Plaintiff's past work as a bookkeeper is skilled and sedentary, and his past work as a tax clerk

is semi-skilled and sedentary.[2] (AR 46.) A hypothetical person of Plaintiff's age, education, and

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are

6

work experience could perform Plaintiff's past work if that person could (1) lift and carry 50 pounds occasionally and 25 pounds frequently; (2) sit, stand, and walk for six hours; (3) occasionally balance and climb; and (4) not be exposed to unprotected heights and dangerous moving machinery. (AR 46-47.) Such a person with this RFC could not perform any work if that person "would lose focus lasting 10 or 15 minutes at a time for a total of one hour during an eight-hour work period." (AR 47.)

**D.    ALJ's Decision**

On October 29, 2008, the ALJ issued a decision finding Plaintiff not disabled since August 30, 2004. (AR 12-23.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of August 30, 2004; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform his past relevant work as a tax clerk and bookkeeper. (AR 17-22.) The ALJ found that Plaintiff had the RFC to (1) climb, balance, and lift and/or carry 50 pounds occasionally; (2) lift and/or carry 25 pounds frequently; and (3) stand, walk, or sit for six hours. (AR 18.) Further, Plaintiff was to avoid exposure to unprotected heights and dangerous moving machinery. (AR 18.)

The ALJ further found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 19.)

The ALJ also noted the testimony of the lay witnesses as follows:

> [Plaintiff's] employer at Stamoules Produce Company reported in July, 2007, that following his stroke, his accuracy and speed were slowed, he would have lapses of memory and concentration, and there were occasions where he would slip into a trance during normal conversation. Thus, his workload was shortened, and others were assigned to help him keep up with his duties, but eventually there was no work

sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

7

that he could easily perform.  Another employer reported that [Plaintiff] worked for their [sic] company from April 4, 2005, to June 29, 2005.  However, his job ended due to health problems which prevented him from concentrating and his memory failed to retain critical information.  He was also half asleep during working hours.

. . . .

[Plaintiff's] pastor reported he had noted that [Plaintiff] dozes off during church services.  In his opinion, he could not hold a job because of impaired concentration.  I have given no weight to his opinion as he is an unacceptable source under [Social Security Ruling] 06-03p.  Moreover, he makes the statement that [Plaintiff] is not able to work, which is an opinion reserved to the Commissioner.

(AR 19, 22 (internal citations omitted).)

Finally, the ALJ gave "some weight" to Dr. Reddy's opinion but disagreed "with his finding that [Plaintiff] could not do a full time competitive job that requires activity on a sustained basis" because such a conclusion "is in conflict with the findings made by the clinical psychologist and State agency medical experts."  (AR 22.)

Plaintiff sought review of this decision before the Appeals Council.  On August 20, 2009, the Appeals Council denied review.  (AR 1-5.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

**E.     Plaintiff's Contentions on Appeal**

On October 13, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ (1) failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, (2) failed to articulate legally sufficient rationale to reject the third-party testimonial evidence, and (3) improperly rejected Dr. Reddy's opinion.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

1    evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

2    909, 911 (9th Cir. 2007).

3    "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

4    *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

5    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

6    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

7    U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the

8    evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

9    not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

10   504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

11                                      **APPLICABLE LAW**

12   An individual is considered disabled for purposes of disability benefits if he is unable to

13   engage in any substantial, gainful activity by reason of any medically determinable physical or

14   mental impairment that can be expected to result in death or that has lasted, or can be expected to

15   last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

16   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

17   impairments must result from anatomical, physiological, or psychological abnormalities that are

18   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

19   such severity that the claimant is not only unable to do his previous work, but cannot, considering

20   his age, education, and work experience, engage in any other kind of substantial, gainful work that

21   exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

22   The regulations provide that the ALJ must undertake a specific five-step sequential analysis

23   in the process of evaluating a disability. In the First Step, the ALJ must determine whether the

24   claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).

25   If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

26   or a combination of impairments significantly limiting him from performing basic work activities.

27

28                                            9

1   *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

2   claimant has a severe impairment or combination of impairments that meets or equals the

3   requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

4   §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

5   has sufficient RFC[3] despite the impairment or various limitations to perform his past work.  *Id.*

6   §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

7   the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

8   §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

9   sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

10  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

11                                          **DISCUSSION**

12  **A.    Lay Witness Testimony**

13          The ALJ noted in his decision that Plaintiff's pastor, Rev. Gollihar, "reported he had noted

14  that [Plaintiff] dozes off during church services.  In his opinion, he could not hold a job because of

15  impaired concentration.  I have given no weight to his opinion as he is an unacceptable source under

16  [Social Security Ruling] 06-03p."  (AR 22 (internal citation omitted).)  The ALJ further noted that

17  Rev. Gollihar's statement that Plaintiff was not able to work was an opinion reserved to the

18  Commissioner.  (AR 22.)  In addition, the ALJ summarized the statements of Plaintiff's former

19  employers but did not articulate the weight given to these statements or the reasons for rejecting

20  them.  (AR 19.)

21          Plaintiff contends that the ALJ erred in rejecting Rev. Gollihar's testimony and in failing to

22  "articulate any reason to reject the observation of [Plaintiff's] former employers."  (Doc. 12 at 22.)

23  _____

24      [3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
    a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.

25  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from
    an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's

26  RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
    'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"

27  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28                                               10

1  Defendant maintains that the ALJ thoroughly discussed each of the lay witness statements

2  and correctly pointed out that Rev. Gollihar's opinion about Plaintiff's inability to work, which

3  regarded an issue reserved to the Commissioner, was not from an "acceptable medical source."

4  (Doc. 13 at 11-12.)  Defendant asserts that, in any event, dozing off in church does not prove

5  disability and that any failure to discuss the lay witness evidence is harmless error.  (*Id.* at 12.)

6  **1.    Legal Standard**

7  Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ

8  must take into account," unless the ALJ "expressly determines to disregard such testimony and gives

9  reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001);

10  *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).  Lay witness testimony

11  cannot be disregarded without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053

12  (9th Cir. 2006).  In rejecting lay witness testimony, the ALJ need not cite the specific record as long

13  as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does

14  "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's

15  decision.  *Lewis*, 236 F.3d at 512.  Germane reasons for rejecting a lay witness' testimony include

16  inconsistencies between that testimony and the claimant's presentation to treating physicians or the

17  claimant's activities, and the claimant's failure to participate in prescribed treatment. *See Carmickle*

18  *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Greger v. Barnhart*, 464 F.3d

19  968, 972 (9th Cir. 2006); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ also

20  may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642

21  (9th Cir. 1982).

22  "Acceptable medical sources" include licensed physicians, licensed or certified psychologists,

23  licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R.

24  § 404.1513(a). "Other sources" can include nurse-practitioners, physicians' assistants, chiropractors,

11

1  relatives, and clergy.  *Id.* § 404.1513(d).  Social Security Ruling[4] ("SSR") 06-03p provides that the

2  Commissioner may use evidence from sources other than acceptable medical sources, such as clergy

3  and employers, "to show the severity of the individual's impairment(s) and how it affects the

4  individual's ability to function."  SSR 06-03p, 2006 WL 2329939, at *2.

5          Although there is a distinction between what an adjudicator must consider and what
        the adjudicator must explain in the disability determination or decision, the
6        adjudicator generally should explain the weight given to opinions from these "other
        sources," or otherwise ensure that the discussion of the evidence in the determination
7        or decision allows a claimant or subsequent reviewer to follow the adjudicator's
        reasoning, when such opinions may have an effect on the outcome of the case.

8

9  *Id.* at *6.

10         In considering opinions from "other sources," the ALJ applies factors such as (1) how long

11  the source has known and how frequently the source has seen the individual; (2) how consistent the

12  opinion is with other evidence; (3) the degree to which the source presents relevant evidence to

13  support an opinion; (4) how well the source explains the opinion; (5) whether the source has a

14  specialty or area of expertise related to the individual's impairments; and (6) any other factors that

15  tend to support or refute the opinion.  *Id.* at *4-5; *see also* 20 C.F.R. § 404.1527(d).

16         **2.      Analysis**

17         In this case, while the ALJ may have properly discounted Rev. Gollihar's opinion that

18  Plaintiff was unable to work, *see* 20 C.F.R. § 404.1527(e)(1), the ALJ may not disregard the pastor's

19  testimony that Plaintiff "doze[d] off" in church solely because it is "not medical evidence" or is not

20  corroborated by the objective medical evidence.  *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir.

21  2009) (holding that, where ALJ found lay witness "credible in her observations of [the claimant's]

22  activities, . . . the ALJ should not have discredited her testimony on the basis of its relevance or

23  irrelevance to medical conclusions").  That Plaintiff's pastor is not an "acceptable medical source"

24

25         ────────────────────

26         [4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the
   Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding
   precedent upon ALJs.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172

27  F.3d 690, 692 n.2 (9th Cir. 1999).

28                                                     12

is not a germane reason for the ALJ to reject his testimony that Plaintiff would fall asleep in church. As discussed further below, contrary to Defendant's assertion, such testimony is relevant to Plaintiff's ability to work, as the vocational expert testified that such an inability to focus would preclude the performance of any work.

Further, as for the statements from Plaintiff's former employers, although the ALJ reviewed their statements that Plaintiff "would slip into a trance during normal conversation" and "was also half asleep during working hours," the ALJ erred in failing to discuss the weight given to these statements or to give reasons germane to each witness for rejecting them. (AR 19.) These statements pertained to Plaintiff's ability to work, particularly his difficulty in concentrating. The statements from Plaintiff's former employers were probative and were not accounted for in the ALJ's RFC assessment. Thus, they effectively were rejected, and the ALJ was required to give reasons for doing so. *See Stout*, 454 F.3d at 1053.

The Commissioner argues that, in any event, the ALJ's failure to discuss his rejection of the testimony of Plaintiff's former employers was harmless error. (Doc. 13 at 12.) The failure to address lay witness evidence, however, is not harmless unless the Court can conclude confidently that no reasonable ALJ, on crediting the testimony, would reach a different disability determination. *Stout*, 454 F.3d at 1054-56. Here, the ALJ noted that, according to Plaintiff's former employer, Stamoules Produce Company, "following [Plaintiff's] stroke, his accuracy and speed were slowed, he would have lapses of memory and concentration, and there were occasions where he would slip into a trance during normal conversation. . . . [E]ventually there was no work that [Plaintiff] could easily perform." (AR 19.) According to Plaintiff's other employer, Valley Ventures, Inc., Plaintiff's job "ended due to health problems which prevented him from concentrating and his memory failed to retain critical information," and Plaintiff was "half asleep during working hours." (AR 19, 146.) The vocational expert testified that a person could not perform any work in the national economy if that person would lose focus 10 to 15 minutes at a time for an hour during an eight-hour workday. (AR 47.)

13

The statements from Plaintiff's employers pertain to Plaintiff's ability to remain focused and, therefore, were relevant to the disability determination. If the testimony of Plaintiff's employers is credited in its entirety, the Court cannot conclude that no reasonable ALJ would have reached a different disability determination. Thus, the ALJ's failure to discuss his rejection of the testimony of Plaintiff's former employers was not harmless error. *See Stout*, 454 F.3d at 1054-56 (holding that the ALJ's silent disregard of lay testimony was not harmless error because "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony," the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision," and the ALJ's error was neither irrelevant nor non-prejudicial to the nondisability finding).

In sum, the ALJ failed to provide germane reasons for rejecting the testimony of Plaintiff's pastor. The ALJ also failed to provide any reasons for rejecting the testimony of Plaintiff's former employers, and the error was not harmless. Substantial evidence, therefore, does not support the Commissioner's decision that Plaintiff can perform his past work as a tax clerk and bookkeeper. *See Stout*, 454 F.3d at 1056-57. The Court, therefore, reverses the Commissioner's decision and remands to the Commissioner for further administrative proceedings consistent with this order. On remand, the ALJ will reevaluate the lay witness testimony as directed by SSR 06-03p and fully explain his conclusions.

Plaintiff also alleges that the ALJ erred in assessing Plaintiff's credibility and in weighing Dr. Reddy's opinion. The Court need not consider these arguments in light of the need for reversal on other grounds. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the decision of the ALJ is supported by substantial evidence, we do not consider the Secretary's other arguments on appeal."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

**B.     Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court has concluded that the ALJ erred in failing to give germane reasons for rejecting the statements of the lay witnesses.  In these circumstances, it is appropriate to remand this matter for further administrative proceedings.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178.  Here, remand is appropriate because the ALJ must properly address the lay witness testimony before a proper disability determination can be made. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).

<u>**CONCLUSION**</u>

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in

favor of Plaintiff Victor I. Murdock and against Defendant Michael J. Astrue, Commissioner of

Social Security.


IT IS SO ORDERED.

**Dated:     December 14, 2010**          **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE

16